FILED
2025 Sep-08 PM 12:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT A

ELECTRONICALLY FILED
7/30/2025 7:39 AM
01-CV-2025-903110.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
JACQUELINE ANDERSON SMITH, CLERK

**IN THE CIRCUIT COURT
FOR THE TENTH JUDICIAL CIRCUIT
JEFFERSON COUNTY, ALABAMA**

STACY ROBERT NEWSOM;
BENJAMIN KEITH MURRAY;
RANDALL MYERS;
KEVIN NACHTIGAL;
ROBERT SCOTT NAGEM;
JUBEN FLYNN NANCE;
ZACHARY NASH;
SAMUEL SAUL NAVARRO;
HECTOR NAZARIO;
JOSEPH NEAL;
JAMES NEES;
ARIC NELSON;
LEONARD NELSON;
MATTHEW NELSON;
RICHARD NELSON;
ALEXANDER JONATHAN NERAD;
MARGARET GRANT NESBIT;
STEPHEN NESS;
RONNIE NESTFIELD;
DAN NEUMANN;
JAMES NEWMAN;
DARREN DONALD NEWSOME;
JIM NICELY;
JEFFERY NICHOLAS;
TARUS NICHOLS;
GLORIA HANEY NICHOLS;
DAVID NIEHAUS;
EDUARDO NIEVES;
RAFAEL ANTONIO NIEVES;
RICARDO NIEVES JR.;
MARK S NIGGEMYER;
TOM NOEL;
WILLIAM NOLAN;
KENNETH NOLAN;
JOHN HENRY NOONAN;
SHAMERAH NORMAN;
SHANDRA NORRELL;
BRANDY NORRIS;
ROBERT HAYDEN NORRIS;
BRUCE WALTER NORRIS;
RICHARD ALLEN NORTHCUTT;
JD NOVAK;

Civil Action No:_____

**COMPLAINT AND JURY DEMAND**

**JOHN NOVAK JR.;**
**DANIEL NOVAK;**
**JOSEPH NOVELLI;**
**JAMES NOYES;**
**BART NUCKOLS;**
**RICHARD DAVID NUGENT;**
**KEITHROY NURSE;**
**JOHN O'HANLON;**
**COLUMBUS OFFORD;**
**ROBERT FRANK OGDEN;**
**KNOWLE OGLE;**
**GEORGE OHLMAN;**
**ERNESTO OJEDA;**
**JONATHAN OLDAKER;**
**DOUGLAS M. OLIVE;**
**ALBERT OLIVER;**
**JAMES OLIVER;**
**KEITH A OLIVER;**
**JIMMY ONG;**
**LESTER PETER OPOKA;**
**BENJAMIN LOPEZ ORALLO;**
**DOUG ORAZINE;**
**TIMOTHY ORMAN;**
**DONALD JAMES ORMSBEE;**
**STACEY M. OROSE-FORNARI-ESHOM;**
**MONICA ORTIZ;**
**RAMSES ORTIZ;**
**GUILLERMO ORTIZ;**
**DONALD ORYALL;**
**VICTOR J OSNAYA;**
**CRAIG E. OTTMAN;**
**ANDREW OTTO;**
**JAMES L OTTO;**
**RAYMOND OVIATT;**
**ALLEN L. OWENS;**
**MICHAEL OWENS;**
**TRUITT PACE;**
**JOSEPH PACI;**
**DAVID CARMAN PAGANO;**
**BRIAN T. PAHLE;**
**PAUL PAIGE;**
**BRUCE PAINTER;**
**JAMES LARRY PALMER;**
**ORVILLE PALMER;**
**SAMMY PALOMO;**
**GEORGE PANKEY;**
**ANTHONY PAONE;**

**PHILLIP PAPPAS JR;**
**HAROLD PARENTE;**
**PHILIP A PARIMORE;**
**TONY G PARKER;**
**STEPHANIE PARKER;**
**JEREMY PARKER;**
**WILLIAM D. PARKER;**
**REGINA DIANE PARKS;**
**DOUGLAS M PARKS;**
**LUIS PARRILLA;**
**LEROY PARRISH;**
**BILLY K. PARRY;**
**CHARLES PARSON;**
**CHAD VINCENT PASCO;**
**WILLIAM DAVID PASSMORE;**
**NICK PATA;**
**MELODY PATRICK;**
**WILLIAM PATTERSON;**
**MARK PATTERSON;**
**JOHN PATTERSON JR;**
**RICHARD PATTON;**
**CHARLENE MARIA PAULLING;**
**REBECCA PAWLASKI;**
**TRACY CLARICE PAYNE;**
**RUSSELL ELLIOTT PEACE;**
**STEPHEN TYLER PEARSON;**
**KEVIN GARY PEARSON;**
**MAURO PEDROZO;**
**STEVE PEELISH;**
**JAMES PELFREY JR.;**
**JERRY PENA;**
**WILLIAM PENCE;**
**KENNETH PENNINGTON;**
**LISTON PENNINGTON LLL;**
**GARRY PENNYWELL;**
**ARTHUR SHANE YODER;**
**SAMMIE YOUNG;**
**KIRK F. YOUNG;**
**BILLY CHARLES YOUNG II,**

**Plaintiffs,**

**v.**

**3M COMPANY (f/k/a Minnesota**
**Mining and Manufacturing Company);**
**AGC CHEMICALS AMERICAS INC.;**

AMEREX CORPORATION;
ARCHROMA U.S. INC.;
ARKEMA, INC.;
BASF CORPORATION
BUCKEYE FIRE EQUIPMENT
COMPANY;
CARRIER GLOBAL CORPORATION;
CHEMDESIGN PRODUCTS, INC.;
CHEMGUARD, INC.;
CHEMICALS, INC.;
CHEMOURS COMPANY FC, LLC;
CHUBB FIRE, LTD;
CLARIANT CORP.;
CORTEVA, INC.;
DAIKIN AMERICA, INC.;
DEEPWATER CHEMICALS, INC.;
DU PONT DE NEMOURS INC. (f/k/a
DOWDUPONT INC.);
DYNAX CORPORATION;
E.I. DU PONT DE NEMOURS AND
COMPANY;
JOHNSON CONTROLS, INC.;
KIDDE PLC;
NATION FORD CHEMICAL
COMPANY;
NATIONAL FOAM, INC.;
PERIMETER SOLUTIONS, LP;
THE CHEMOURS COMPANY;
TYCO  FIRE PRODUCTS LP, as
successor-in-interest to The Ansul Company;
UNITED TECHNOLOGIES
CORPORATION;
UTC FIRE &    SECURITY AMERICAS
CORPORATION, INC. (f/k/a GE
Interlogix, Inc.);
ALLSTAR FIRE EQUIPMENT;
CB GARMENT, INC.;
FIRE-DEX, LLC;
FIRE SERVICE PLUS, INC.;
GLOBE MANUFACTURING COMPANY
LLC;
HONEYWELL SAFETY PRODUCT USA,
INC.;
INNOTEX CORP.;
L.N. CURTIS & SONS;
LION GROUP, INC.;
MILLIKEN & COMPANY;

**MINE RESPIRATOR COMPANY LLC f/k/a**
**MINE SAFETY APPLIANCES CO., LLC;**
**MSA SAFETY INC.;**
**MUNICIPAL EMERGENCY SERVICES,**
**INC.;**
**NARCOTE LLC d/b/a STEDFAST USA,**
**INC.;**
**PBI PERFORMANCE PRODUCTS, INC.;**
**RICOCHET MANUFACTURING CO., INC;**
**SAFETY COMPONENTS FABRIC**
**TECHNOLOGIES, INC.;**
**SOUTHERN MILLS, INC. d/b/a TENCATE**
**PROTECTIVE FABRICS;**
**SPRINGFIELD LLC;**
**VERIDIAN LIMITED;**
**W.L. GORE & ASSOCIATES INC.;**
**WITMER PUBLIC SAFETY GROUP,**

**Defendants.**

## COMPLAINT

COMES NOW, the Plaintiffs, by and through undersigned counsel, and allege upon information and belief as follows:

## INTRODUCTION

1.      Plaintiffs bring this action for damages for personal injury resulting from exposure to aqueous film-forming foams ("AFFF") and firefighter turnout gear ("TOG") containing the toxic chemicals collectively known as per and polyfluoroalkyl substances ("PFAS"). PFAS includes, but is not limited to, perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS") and related chemicals including those that degrade to PFOA and/or PFOS.

2.      AFFF is a specialized substance designed to extinguish petroleum-based fires. It has been used for decades by military and civilian firefighters to extinguish fires in training and in response to Class B fires.

3.      TOG is personal protective equipment designed for heat and moisture resistance in order to protect firefighters in hazardous situations. Most turnout gear is made up of a thermal liner, moisture barrier, and an outer layer. The inner layers contain PFAS, and the outer layer is often treated with additional PFAS.

4.      Defendants collectively designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise released into the stream of commerce AFFF or TOG with knowledge that it contained highly toxic and bio persistent PFAS, which would expose end users of the product to the risks associated with PFAS. Further, defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF or TOG which contained PFAS for use in firefighting.

5.      PFAS binds to proteins in the blood of humans exposed to the material and remains and persists over long periods of time. Due to their unique chemical structure, PFAS accumulates in the blood and body of exposed individuals.

6.      PFAS are highly toxic and carcinogenic chemicals. Defendants knew, or should have known, that PFAS remain in the human body while presenting significant health risks to humans.

7.      Defendants' PFAS-containing AFFF or TOG products were used by the Plaintiffs in their intended manner, without significant change in the products' condition. Plaintiffs were unaware of the dangerous properties of the Defendants' AFFF or TOG products and relied on the Defendants' instructions as to the proper handling of the products. Plaintiffs' consumption, inhalation and/or dermal absorption of PFAS from Defendant's AFFF or TOG products caused Plaintiffs to develop the serious medical conditions and complications alleged herein.

8.      Plaintiffs were unaware of the dangerous PFAS in their drinking water and unaware of the toxic nature of the Defendants' PFAS in general. Plaintiffs' consumption of PFAS from Defendants' contamination and inappropriate disposal caused Plaintiffs to develop the serious medical conditions and complications alleged herein.

9.      Through this action, Plaintiffs seek to recover compensatory and punitive damages arising out of the permanent and significant damages sustained as a direct result of exposure to Defendants' AFFF or TOG products at various locations during the course of Plaintiffs' training and firefighting activities, and exposure to Defendants' PFAS at various locations. Plaintiffs further seek injunctive, equitable, and declaratory relief arising from the same.

## JURISIDICTION AND VENUE

10.      The Defendants are subject to the jurisdiction of this Court on the grounds that (a) one or more of the Defendants is a foreign corporation whose principal place of business is located in the State of Alabama; (b) one or more of the Defendants are foreign corporations that either are registered to conduct business in the State of  Alabama and have actually transacted business in Alabama; and/or (c) one or more of the Defendants is a domestic corporation native to the State of Alabama.

11.      Venue is proper pursuant to *Alabama Code Section 6-3-7* as significant events resulting in the cause of action and subsequent injuries occurred in this county.

12.      Joinder of all parties is proper pursuant to Rule 20(a) of the *Alabama Rules of Civil Procedure*. Defendants are permissively joined in this action because the exposure, injuries, and relief requested all arise out of similar occurrences or transactions and questions of law and fact are common to all parties.

## PARTIES

13.    Plaintiff Stacy Robert Newsom is a resident and citizen of Decatur, Alabama. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

14.    Plaintiff Stacy Robert Newsom was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

15.    Plaintiff Benjamin Keith Murray is a resident and citizen of Los Lunas, New Mexico. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

16.    Plaintiff Benjamin Keith Murray was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

17.    Plaintiff Randall Myers is a resident and citizen of Columbia, South Carolina. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

18.    Plaintiff Randall Myers was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

19.    Plaintiff Kevin Nachtigal is a resident and citizen of Des Moines, Iowa. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during

his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

20.    Plaintiff Kevin Nachtigal was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

21.    Plaintiff Robert Scott Nagem is a resident and citizen of Manassas, Virginia. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

22.    Plaintiff Robert Scott Nagem was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF or TOG products.

23.    Plaintiff Juben Flynn Nance is a resident and citizen of Sacramento, California. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

24.    Plaintiff Juben Flynn Nance was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

25.    Plaintiff Zachary Nash is a resident and citizen of Little Falls, New York. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was

exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

26.    Plaintiff Zachary Nash was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

27.    Plaintiff Samuel Saul Navarro is a resident and citizen of Tucson, Arizona. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

28.    Plaintiff Samuel Saul Navarro was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

29.    Plaintiff Hector Nazario is a resident and citizen of Spring Hill, Florida. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

30.    Plaintiff Hector Nazario was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

31.    Plaintiff Joseph Neal is a resident and citizen of Spring Hill, Florida. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

32.    Plaintiff Joseph Neal was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

33.    Plaintiff James Nees is a resident and citizen of Simi Valley, California. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

34.    Plaintiff James Nees was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

35.    Plaintiff Aric Nelson is a resident and citizen of Odessa, Florida. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

36.    Plaintiff Aric Nelson was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

37.    Plaintiff Leonard Nelson is a resident and citizen of Moss Point, Mississippi. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

38.    Plaintiff Leonard Nelson was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

39.     Plaintiff Matthew Nelson is a resident and citizen of Mentor, Ohio. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

40.     Plaintiff Matthew Nelson was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

41.     Plaintiff Richard Nelson is a resident and citizen of Brownsville, Tennessee. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

42.     Plaintiff Richard Nelson was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

43.     Plaintiff Alexander Jonathan Nerad is a resident and citizen of Ashland, Wisconsin. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

44.     Plaintiff Alexander Jonathan Nerad was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

45.     Plaintiff Margaret Grant Nesbit is a resident and citizen of Santee, South Carolina. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish

fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

46.    Plaintiff Margaret Grant Nesbit was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

47.    Plaintiff Stephen Ness is a resident and citizen of Ferdinand, Indiana. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

48.    Plaintiff Stephen Ness was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

49.    Plaintiff Ronnie Nestfield is a resident and citizen of Hephzibah, Georgia. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

50.    Plaintiff Ronnie Nestfield was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

51.    Plaintiff Dan Neumann is a resident and citizen of Burlington, Iowa. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to

PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

52.    Plaintiff Dan Neumann was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

53.    Plaintiff James Newman is a resident and citizen of Lees Summit, Missouri. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

54.    Plaintiff James Newman was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF or TOG products.

55.    Plaintiff Darren Donald Newsome is a resident and citizen of Beaver, Kentucky. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

56.    Plaintiff Darren Donald Newsome was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

57.    Plaintiff Jim Nicely is a resident and citizen of Chester, Virginia. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

58.    Plaintiff Jim Nicely was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

59.    Plaintiff Jeffery Nicholas is a resident and citizen of Temple, Texas. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

60.    Plaintiff Jeffery Nicholas was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

61.    Plaintiff Tarus Nichols is a resident and citizen of Lancaster, Texas. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

62.    Plaintiff Tarus Nichols was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF or TOG products.

63.    Plaintiff Gloria Haney Nichols is a resident and citizen of Saint Albans, West Virginia. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

64.    Plaintiff Gloria Haney Nichols was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

65.     Plaintiff David Niehaus is a resident and citizen of Platteville, Wisconsin. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

66.     Plaintiff David Niehaus was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

67.     Plaintiff Eduardo Nieves is a resident and citizen of Hialeah, Florida. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

68.     Plaintiff Eduardo Nieves was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

69.     Plaintiff Rafael Antonio Nieves is a resident and citizen of Sebring, Florida. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

70.     Plaintiff Rafael Antonio Nieves was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

71.     Plaintiff Ricardo Nieves Jr. is a resident and citizen of Woodridge, New York. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish

fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

72.     Plaintiff Ricardo Nieves Jr. was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

73.     Plaintiff Mark S Niggemyer is a resident and citizen of Fairmont, West Virginia. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

74.     Plaintiff Mark S Niggemyer was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF or TOG products.

75.     Plaintiff Tom Noel is a resident and citizen of Brady, Montana. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

76.     Plaintiff Tom Noel was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

77.     Plaintiff William Nolan is a resident and citizen of Berwick, Maine. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to

PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

78.     Plaintiff William Nolan was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

79.     Plaintiff Kenneth Nolan is a resident and citizen of Windham, New Hampshire. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

80.     Plaintiff Kenneth Nolan was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF or TOG products.

81.     Plaintiff John Henry Noonan is a resident and citizen of Naples, Florida. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

82.     Plaintiff John Henry Noonan was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

83.     Plaintiff Shamerah Norman is a resident and citizen of Minneapolis, Minnesota. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

84.    Plaintiff Shamerah Norman was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF or TOG products.

85.    Plaintiff Shandra Norrell is a resident and citizen of Sangerville, Maine. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

86.    Plaintiff Shandra Norrell was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

87.    Plaintiff Brandy Norris is a resident and citizen of Slidell, Louisiana. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

88.    Plaintiff Brandy Norris was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

89.    Plaintiff Robert Hayden Norris is a resident and citizen of Hope Mills, North Carolina. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

90.    Plaintiff Robert Hayden Norris was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

91.    Plaintiff Bruce Walter Norris is a resident and citizen of Winlock, Washington. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

92.    Plaintiff Bruce Walter Norris was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

93.    Plaintiff Richard Allen Northcutt is a resident and citizen of Texarkana, Texas. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

94.    Plaintiff Richard Allen Northcutt was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

95.    Plaintiff JD Novak is a resident and citizen of Quapaw, Oklahoma. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

96.    Plaintiff JD Novak was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

97.    Plaintiff John Novak Jr. is a resident and citizen of Tyler, Texas. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his

working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

98.    Plaintiff John Novak Jr. was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

99.    Plaintiff Daniel Novak is a resident and citizen of Ogden, Utah. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

100.    Plaintiff Daniel Novak was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

101.    Plaintiff Joseph Novelli is a resident and citizen of Danville, California. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

102.    Plaintiff Joseph Novelli was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

103.    Plaintiff James Noyes is a resident and citizen of Woodbine, Georgia. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to

PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

104.     Plaintiff James Noyes was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF or TOG products.

105.     Plaintiff Bart Nuckols is a resident and citizen of Chicago, Illinois. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

106.     Plaintiff Bart Nuckols was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF or TOG products.

107.     Plaintiff Richard David Nugent is a resident and citizen of Westport, Indiana. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

108.     Plaintiff Richard David Nugent was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF or TOG products.

109.     Plaintiff Keithroy Nurse is a resident and citizen of Roswell, Georgia. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

110.    Plaintiff Keithroy Nurse was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

111.    Plaintiff John O'Hanlon is a resident and citizen of Troy, Missouri. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

112.    Plaintiff John O'Hanlon was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF or TOG products.

113.    Plaintiff Columbus Offord is a resident and citizen of San Diego, California. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

114.    Plaintiff Columbus Offord was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

115.    Plaintiff Robert Frank Ogden is a resident and citizen of Columbus, Mississippi. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

116.    Plaintiff Robert Frank Ogden was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

117.    Plaintiff Knowle Ogle is a resident and citizen of Denver, Colorado. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

118.    Plaintiff Knowle Ogle was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

119.    Plaintiff George Ohlman is a resident and citizen of Chickamauga, Georgia. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

120.    Plaintiff George Ohlman was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

121.    Plaintiff Ernesto Ojeda is a resident and citizen of San Pedro, California. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

122.    Plaintiff Ernesto Ojeda was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF or TOG products.

123.    Plaintiff Jonathan Oldaker is a resident and citizen of Portsmouth, Virginia. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish

fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

124.    Plaintiff Jonathan Oldaker was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

125.    Plaintiff Douglas M. Olive is a resident and citizen of Northport, Alabama. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

126.    Plaintiff Douglas M. Olive was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

127.    Plaintiff Albert Oliver is a resident and citizen of Elmore, Alabama. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

128.    Plaintiff Albert Oliver was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF or TOG products.

129.    Plaintiff James Oliver is a resident and citizen of Waynesville, North Carolina. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was

exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

130.    Plaintiff James Oliver was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

131.    Plaintiff Keith A Oliver is a resident and citizen of Douglassville, Pennsylvania. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

132.    Plaintiff Keith A Oliver was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

133.    Plaintiff Jimmy Ong is a resident and citizen of Sylmar, California. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

134.    Plaintiff Jimmy Ong was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

135.    Plaintiff Lester Peter Opoka is a resident and citizen of Vicksburg, Mississippi. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

136.    Plaintiff Lester Peter Opoka was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

137.    Plaintiff Benjamin Lopez Orallo is a resident and citizen of San Diego, California. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

138.    Plaintiff Benjamin Lopez Orallo was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

139.    Plaintiff Doug Orazine is a resident and citizen of Kevil, Kentucky. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

140.    Plaintiff Doug Orazine was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

141.    Plaintiff Timothy Orman is a resident and citizen of Alton, Illinois. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

142.    Plaintiff Timothy Orman was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

143.    Plaintiff Donald James Ormsbee is a resident and citizen of Delta Junction, Alaska. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

144.    Plaintiff Donald James Ormsbee was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

145.    Plaintiff Stacey M. Orose-Fornari-Eshom is a resident and citizen of Apache Junction, Arizona. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

146.    Plaintiff Stacey M. Orose-Fornari-Eshom was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF or TOG products.

147.    Plaintiff Monica Ortiz is a resident and citizen of Alameda, California. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

148.    Plaintiff Monica Ortiz was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

149.    Plaintiff Ramses Ortiz is a resident and citizen of Kissimmee, Florida. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during

his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

150.    Plaintiff Ramses Ortiz was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

151.    Plaintiff Guillermo Ortiz is a resident and citizen of Houston, Texas. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

152.    Plaintiff Guillermo Ortiz was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF or TOG products.

153.    Plaintiff Donald Oryall is a resident and citizen of Basin, Wyoming. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

154.    Plaintiff Donald Oryall was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

155.    Plaintiff Victor J Osnaya is a resident and citizen of Irving, Texas. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to

PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

156. Plaintiff Victor J Osnaya was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF or TOG products.

157. Plaintiff Craig E. Ottman is a resident and citizen of Pataskala, Ohio. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

158. Plaintiff Craig E. Ottman was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF or TOG products.

159. Plaintiff Andrew Otto is a resident and citizen of Church Hill, Tennessee. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

160. Plaintiff Andrew Otto was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

161. Plaintiff James L Otto is a resident and citizen of Fond Du Lac, Wisconsin. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

162.    Plaintiff James L Otto was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF or TOG products.

163.    Plaintiff Raymond Oviatt is a resident and citizen of Crystal River, Florida. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

164.    Plaintiff Raymond Oviatt was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

165.    Plaintiff Allen L. Owens is a resident and citizen of Fair Oaks, California. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

166.    Plaintiff Allen L. Owens was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF or TOG products.

167.    Plaintiff Michael Owens is a resident and citizen of Niceville, Florida. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

168.    Plaintiff Michael Owens was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

169.    Plaintiff Truitt Pace is a resident and citizen of Meridian, Mississippi. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

170.    Plaintiff Truitt Pace was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF or TOG products.

171.    Plaintiff Joseph Paci is a resident and citizen of Palm Coast, Florida. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

172.    Plaintiff Joseph Paci was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

173.    Plaintiff David Carman Pagano is a resident and citizen of Roy, Utah. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

174.    Plaintiff David Carman Pagano was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

175.    Plaintiff Brian T. Pahle is a resident and citizen of Silverton, Oregon. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during

his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

176.    Plaintiff Brian T. Pahle was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

177.    Plaintiff Paul Paige is a resident and citizen of Roanoke, Virginia. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

178.    Plaintiff Paul Paige was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

179.    Plaintiff Bruce Painter is a resident and citizen of Jackson, Tennessee. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

180.    Plaintiff Bruce Painter was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF or TOG products.

181.    Plaintiff James Larry Palmer is a resident and citizen of Dawsonville, Georgia. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was

exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

182.    Plaintiff James Larry Palmer was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

183.    Plaintiff Orville Palmer is a resident and citizen of Burnet, Texas. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

184.    Plaintiff Orville Palmer was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

185.    Plaintiff Sammy Palomo is a resident and citizen of Imperial Beach, California. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

186.    Plaintiff Sammy Palomo was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF or TOG products.

187.    Plaintiff George Pankey is a resident and citizen of Oak Harbor, Washington. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

188.    Plaintiff George Pankey was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

189.    Plaintiff Anthony Paone is a resident and citizen of Waterford, Pennsylvania. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

190.    Plaintiff Anthony Paone was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

191.    Plaintiff Phillip Pappas Jr is a resident and citizen of Danville, New Hampshire. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

192.    Plaintiff Phillip Pappas Jr was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

193.    Plaintiff Harold Parente is a resident and citizen of Irvington, Kentucky. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

194.    Plaintiff Harold Parente was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

195.    Plaintiff Philip A Parimore is a resident and citizen of Jackson, Tennessee. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

196.    Plaintiff Philip A Parimore was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF or TOG products.

197.    Plaintiff Tony G Parker is a resident and citizen of Cullman, Alabama. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

198.    Plaintiff Tony G Parker was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

199.    Plaintiff Stephanie Parker is a resident and citizen of Joint Base Elmendorf-Richardson, Alaska. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

200.    Plaintiff Stephanie Parker was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

201.    Plaintiff Jeremy Parker is a resident and citizen of Brooklyn, Michigan. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during

his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

202.    Plaintiff Jeremy Parker was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

203.    Plaintiff William D. Parker is a resident and citizen of Brandon, Mississippi. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

204.    Plaintiff William D. Parker was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

205.    Plaintiff Regina Diane Parks is a resident and citizen of Denver, Colorado. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

206.    Plaintiff Regina Diane Parks was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

207.    Plaintiff Douglas M Parks is a resident and citizen of Fort Worth, Texas. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to

PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

208.    Plaintiff Douglas M Parks was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

209.    Plaintiff Luis Parrilla is a resident and citizen of El Dorado Hills, California. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

210.    Plaintiff Luis Parrilla was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

211.    Plaintiff Leroy Parrish is a resident and citizen of Grants Pass, Oregon. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

212.    Plaintiff Leroy Parrish was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

213.    Plaintiff Billy K. Parry is a resident and citizen of Moorestown, New Jersey. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

214.   Plaintiff Billy K. Parry was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

215.   Plaintiff Charles Parson is a resident and citizen of Dalton, Georgia. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

216.   Plaintiff Charles Parson was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

217.   Plaintiff Chad Vincent Pasco is a resident and citizen of Moundsville, West Virginia. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

218.   Plaintiff Chad Vincent Pasco was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

219.   Plaintiff William David Passmore is a resident and citizen of Pottersville, Missouri. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

220.   Plaintiff William David Passmore was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF or TOG products.

221.    Plaintiff Nick Pata is a resident and citizen of West Nyack, New York. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

222.    Plaintiff Nick Pata was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

223.    Plaintiff Melody Patrick is a resident and citizen of Vinita, Oklahoma. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

224.    Plaintiff Melody Patrick was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

225.    Plaintiff William Patterson is a resident and citizen of Crescent City, California. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

226.    Plaintiff William Patterson was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

227.    Plaintiff Mark Patterson is a resident and citizen of Ludington, Michigan. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish

fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

228.    Plaintiff Mark Patterson was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF or TOG products.

229.    Plaintiff John Patterson Jr is a resident and citizen of Wagram, North Carolina. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

230.    Plaintiff John Patterson Jr was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

231.    Plaintiff Richard Patton is a resident and citizen of Adrian, Michigan. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

232.    Plaintiff Richard Patton was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF or TOG products.

233.    Plaintiff Charlene Maria Paulling is a resident and citizen of Delmar, Delaware. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was

exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

234.    Plaintiff Charlene Maria Paulling was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

235.     Plaintiff Rebecca Pawlaski is a resident and citizen of Dillsburg, Pennsylvania. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

236.    Plaintiff Rebecca Pawlaski was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

237.     Plaintiff Tracy Clarice Payne is a resident and citizen of Franklinton, North Carolina. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

238.    Plaintiff Tracy Clarice Payne was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF or TOG products.

239.     Plaintiff Russell Elliott Peace is a resident and citizen of Rome, Georgia. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

240.   Plaintiff Russell Elliott Peace was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

241.    Plaintiff Stephen Tyler Pearson is a resident and citizen of Jackson, Tennessee. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

242.   Plaintiff Stephen Tyler Pearson was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF or TOG products.

243.    Plaintiff Kevin Gary Pearson is a resident and citizen of Flint, Texas. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

244.   Plaintiff Kevin Gary Pearson was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

245.    Plaintiff Mauro Pedrozo is a resident and citizen of Mission, Texas. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

246.   Plaintiff Mauro Pedrozo was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

247.    Plaintiff Steve Peelish is a resident and citizen of Ravenna, Ohio. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

248.    Plaintiff Steve Peelish was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF or TOG products.

249.    Plaintiff James Pelfrey Jr. is a resident and citizen of Peoria, Arizona. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

250.    Plaintiff James Pelfrey Jr. was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

251.    Plaintiff Jerry Pena is a resident and citizen of Fayetteville, North Carolina. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

252.    Plaintiff Jerry Pena was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

253.    Plaintiff William Pence is a resident and citizen of North Babylon, New York. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish

fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

254.    Plaintiff William Pence was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF or TOG products.

255.    Plaintiff Kenneth Pennington is a resident and citizen of Joliet, Illinois. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

256.    Plaintiff Kenneth Pennington was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF or TOG products.

257.    Plaintiff Liston Pennington lll is a resident and citizen of Camp Creek, West Virginia. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

258.    Plaintiff Liston Pennington lll was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF or TOG products.

259.    Plaintiff Garry Pennywell is a resident and citizen of Little Elm, Texas. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to

PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

260.    Plaintiff Garry Pennywell was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

261.    Plaintiff Arthur Shane Yoder is a resident and citizen of Hondo, Texas. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

262.    Plaintiff Arthur Shane Yoder was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF or TOG products.

263.    Plaintiff Sammie Young is a resident and citizen of Cincinnati, Ohio. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

264.    Plaintiff Sammie Young was diagnosed with ulcerative colitis as a result of exposure to Defendants' AFFF or TOG products.

265.    Plaintiff Kirk F. Young is a resident and citizen of Sparta, Tennessee. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

266.    Plaintiff Kirk F. Young was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

267.    Plaintiff Billy Charles Young II is a resident and citizen of Midland, Texas. Plaintiff regularly used, and was thereby directly exposed to, AFFF and TOG in training and to extinguish fires during his working career as a military and/or civilian firefighter. Additionally, Plaintiff was exposed to PFAS chemicals through drinking water both at home and at their place of work, due to contamination on behalf of defendants, and potential AFFF sources.

268.    Plaintiff Billy Charles Young II was diagnosed with thyroid disease as a result of exposure to Defendants' AFFF or TOG products.

269.    Defendants are designers, marketers, developers, manufacturers, distributors, releasers, instructors, promotors and sellers of PFAS-containing AFFF products or underlying PFAS containing chemicals used in AFFF production.  The following Defendants, at all times relevant to this lawsuit, manufactured, designed, marketed, distributed, released, instructed, promoted and/or otherwise sold (directly or indirectly) PFAS-containing AFFF products to various locations for use in fighting Class B fires such that each Defendant knew or should have known said products would be delivered to areas for active use by Plaintiffs during the course of training and firefighting activities.

270.    Defendant, 3M Company, f/k/a Minnesota Mining and Manufacturing Company, ("3M"), is a Delaware corporation and does business throughout the United States. 3M has its principal place of business at 3M Center, St. Paul, Minnesota 55133.

271.    3M designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject

of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

272.    Defendant AGC Chemicals Americas, Inc. ("AGC") is a Delaware corporation and does business throughout the United States. AGC has its principal place of business at 55 E. Uwchlan Ave., Suite 201, Exton, Pennsylvania 19341.

273.    AGC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

274.    Defendant Amerex Corporation ("Amerex") is an Alabama corporation and does business throughout the United States. Amerex has its principal place of business at 7595 Gadsden Highway, Trussville, Alabama 35173.

275.    Amerex designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled

and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

276.    Defendant Archroma U.S. Inc. ("Archroma") is a North Carolina company and does business throughout the United States. Archroma has its principal place of business at 5435 77 Center Drive, #10 Charlotte, North Carolina 28217. Upon information and belief, Archroma was formed in 2013 as part of the acquisition of Clariant Corporation's Textile Chemicals, Paper Specialties and Emulsions business by SK Capital Partners.

277.    Archroma designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

278.    Defendant Arkema, Inc. ("Arkema") is a Pennsylvania corporation and does business throughout the United States. Arkema has its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Upon information and belief, assets of Arkema's fluorochemical business were purchased by Defendant Dupont in 2002.

279.    Arkema designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled

and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

280.    Defendant BASF Corporation ("BASF") is a Delaware corporation and does business throughout the United States. BASF has its principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932.

281.    BASF designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

282.    Defendant Buckeye Fire Equipment Company ("Buckeye") is an Ohio corporation and does business throughout the United States. Buckeye has its principal place of business at 110 Kings Road, Mountain, North Carolina 28086.

283.    Buckeye designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

284.    Defendant Carrier Global Corporation ("Carrier") is a Delaware corporation and does business throughout the United States. Carrier has its principal place of business at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418. Upon information and belief, Carrier was formed in 2020 and is the parent company of Kidde-Fenwal, Inc., a manufacturer of AFFF.

285.    Carrier designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

286.    Defendant ChemDesign Products, Inc. ("ChemDesign") is a Texas corporation and does business throughout the United States. ChemDesign has its principal place of business at 2 Stanton Street, Marinette, Wisconsin 54143.

287.    ChemDesign designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

288.    Defendant Chemguard, Inc. ("Chemguard") is a Wisconsin corporation and does business throughout the United States. Chemguard has its principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

289.    Chemguard designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

290.    Defendant Chemicals, Inc. ("Chemicals") is a Texas corporation and does business throughout the United States. Chemicals has its principal place of business at 12321 Hatcherville Road, Baytown, Texas 77521.

291.    Chemicals designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

292.    Defendant Chemours Company FC, LLC ("Chemours FC"), is a Delaware corporation and does business throughout the United States. Chemours has its principal place of business at 1007

Market Street, Wilmington, Delaware 19899. Chemours FC is a subsidiary of The Chemours Company.

293.    Chemours FC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

294.    Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ. Upon information and belief, Chubb is registered in the United Kingdom with a registered number of 134210.  Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to, Chubb Fire & Security Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc.

295.    Chubb Fire designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

296.    Defendant Clariant Corporation ("Clariant") is a New York corporation and does business throughout the United States. Clariant has its principal place of business at 4000 Monroe Road, Charlotte, North Carolina 28205.

297.    Clariant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

298.    Defendant Corteva, Inc. ("Corteva") is a Delaware Corporation that conducts business throughout the United States. Its principal place of business is Chestnut Run Plaza 735, Wilmington, Delaware 19805. Corteva is the successor-in-interest to Dupont Chemical Solutions Enterprise.

299.    Corteva designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

300.    Defendant Daikin America, Inc. ("Daikin") is a Delaware corporation and does business throughout the United States. Daikin has its principal place of business in Orangeburg, New York.

301.    Daikin designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed,

released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

302.    Defendant Deepwater Chemicals, Inc. ("Deepwater") is a Delaware corporation and does business throughout the United States. Deepwater's principal place of business is at 196122 E County Road 735, Woodward, Oklahoma 73801.

303.    Deepwater designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

304.    Defendant Du Pont de Nemours Inc. (f/k/a DowDuPont, Inc.) ("DowDuPont"), is a Delaware corporation and does business throughout the United States. DowDuPont, has its principal place of business at 1007 Market Street, Wilmington, Delaware 19899 and 2211 H.H. Dow Way, Midland, Michigan 48674. DowDupont was created in 2015 to transfer Chemours and DuPont liabilities for manufacturing and distributing flurosurfactants to AFFF manufacturers.

305.    DowDuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials,

promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

306.    Defendant Dynax Corporation ("Dynax") is a New York corporation that conducts business throughout the United States. Its principal place of business is 103 Fairview Park Drive, Elmsford, New York, 10523-1544.

307.    Dynax designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

308.    Defendant E. I. du Pont de Nemours and Company ("DuPont"), is a Delaware corporation and does business throughout the United States. DuPont has its principal place of business at 1007 Market Street, Wilmington, Delaware 19898.

309.    DuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

310.    Defendant Johnson Controls, Inc. ("Johnson Controls") is a Wisconsin corporation and does business throughout the United States. Johnson Controls has its principal place of business in Milwaukee, Wisconsin.

311.    Johnson Controls designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

312.    Defendant Kidde P.L.C., Inc. ("Kidde P.L.C.") is a foreign corporation organized and existing under the laws of the State of Delaware and does business throughout the United States. Kidde P.L.C. has its principal place of business at One Carrier Place, Farmington, Connecticut 06034. Upon information and belief, Kidde PLC was formerly known as Williams Holdings, Inc. and/or Williams US, Inc.

313.    Kidde P.L.C. designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

314.    Defendant Nation Ford Chemical Company ("Nation Ford") is a South Carolina company and does business throughout the United States. Nation Ford has its principal place of business at 2300 Banks Street, Fort Mill, South Carolina 29715.

315.    Nation Ford designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed,

developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

316.    Defendant National Foam, Inc. ("National Foam") is a Delaware corporation and does business throughout the United States. National Foam has its principal place of business at 141 Junny Road, Angier, North Carolina, 27501.

317.    National Foam designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

318.    Defendant Perimeter Solutions, LP ("Perimeter") is a Delaware corporation and does business throughout the United States. Perimeter has its principal place of business in Rancho Cucamonga, California.

319.    Perimeter designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

320.    Defendant The Chemours Company ("Chemours"), is a Delaware corporation and does business throughout the United States. Chemours has its principal place of business 1007 Market Street, Wilmington, Delaware 19898. Upon information and belief, Chemours was spun off from DuPont in 2015 to assume PFAS related liabilities.

321.    Chemours designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

322.    Defendant Tyco Fire Products, LP, as successor-in-interest to The Ansul Company ("Tyco"), is a Delaware limited partnership and does business throughout the United States. Tyco has its principal place of business at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19466. Tyco manufactured and currently manufactures the Ansul brand of products, including Ansul brand AFFF containing PFAS.

323.    Tyco is the successor in interest to the corporation formerly known as The Ansul Company ("Ansul"). At all times relevant, Tyco/Ansul designed, marketed, developed, manufactured, distributed released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

324.    Defendant United Technologies Corporation ("United Technologies") is a foreign corporation organized and existing under the laws of the State of Delaware and does business throughout the United States. United Technologies has its principal place of business at 8 Farm Springs Road, Farmington, Connecticut 06032.

325.    United Technologies designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

326.    Defendant UTC Fire & Security Americas Corporation, Inc.  (f/k/a GE Interlogix, Inc.) ("UTC") is a North Carolina corporation and does business throughout the United States. UTC has principal place of business at 3211 Progress Drive, Lincolnton, North Carolina 28092. Upon information and belief, Kidde-Fenwal, Inc. is part of the UTC Climate Control & Security unit of United Technologies Corporation.

327.    UTC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

328.    Defendant Allstar Fire Equipment is a California corporation ("Allstar") and does business throughout the United States. Allstar has its principal place of business at 12328 Lower Azusa Road, Arcadia, California 91006.

329.    Allstar developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

330.    Defendant CB Garment, Inc. ("CrewBoss") is a Delaware corporation and does business throughout the United States. CrewBoss has its principal place of business in Eugene, Oregon.

331.    CrewBoss developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

332.    Defendant Fire-Dex, LLC ("Fire-Dex") is a Delaware corporation and does business throughout the United States. Fire-Dex has its principal place of business at 780 South Progress Drive, Medina, Ohio 44256.

333.    Fire-Dex developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

334.    Defendant Globe Manufacturing Company LLC ("Globe") is a New Hampshire corporation and does business throughout the United States. Globe has its principal place of business at 37 Loudon Road, Pittsfield, New Hampshire 03263.

335.    Globe developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

336.    Defendant Fire Service Plus, Inc. ("Fire Service Plus") is a Georgia corporation and does business throughout the United States. Fire Service Plus has its principal place of business in Simi Valley, California.

337.    Fire Service Plus developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

338.    Defendant Honeywell Safety Products USA, Inc. ("Honeywell") is a Delaware corporation and does business throughout the United States. Honeywell has its principal place of business at 300 South Tryon Street Suite 500, Charlotte, North Carolina 28202.

339.    Honeywell developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

340.    Defendant Innotex Corp. ("Innotex") is a Delaware corporation and does business throughout the United States. Innotex has its principal place of business in Ohatchee, Alabama.

341.    Innotex developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

342.    Defendant Lion Group, Inc. ("Lion") is an Ohio corporation and does business throughout the United States. Lion has its principal place of business at 7200 Poe Avenue, Suite 400 Dayton, Ohio, 45414.

343.    Lion developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

344.    Defendant L.N. Curtis & Sons ("LN Curtis") is a California corporation and does business throughout the United States. LN Curtis has its principal place of business in Farmington, Connecticut.

345.    LN Curtis developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

346.    Defendant Milliken & Company ("Milliken") is a Delaware corporation and does business throughout the United States. Milliken has its principal place of business in Spartanburg, South Carolina.

347.    Milliken developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

348.    Defendant Mine Respirator Company, LLC, formerly known as Mine Safety Appliances Company LLC, ("MRC") is a Pennsylvania corporation and does business throughout the United States. MRC has its principal place of business at 1000 Cranberry Woods Drive, Cranberry Township, Pennsylvania, 16066.

349.    MRC developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

350.    Defendant MSA Safety Inc. ("MSA") is a Pennsylvania corporation and does business throughout the United States. MSA has its principal place of business at 1000 Cranberry Woods Drive, Cranberry Township, Pennsylvania, 16066.

351.    MSA developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

352.    Defendant Municipal Emergency Services, Inc. ("MES") is a Nevada corporation and does business throughout the United States. MES has its principal place of business at 12 Turnberry Lane, Sandy Hook, Connecticut 06482.

353.    MES developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

354.    Defendant Narcote LLC d/b/a Stedfast USA, Inc. ("Stedfast") is a Delaware corporation and does business throughout the United States. Stadfast has its principal place of business at 800 Mountain View Drive, Piney Flats, Tennessee 37686.

355.    Stedfast developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

356.    Defendant PBI Performance Products, Inc. ("PBI") is a Delaware corporation and does business throughout the United States. PBI has its principal place of business at 9800-D Southern Pine Boulevard, Charlotte, North Carolina 28273.

357.    PBI developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

358.    Defendant Ricochet Manufacturing Co., Inc. ("Ricochet") is a Pennsylvania corporation and does business throughout the United States. Ricochet has its principal place of business in Philadelphia, Pennsylvania.

359.    Ricochet developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

360.    Defendant Safety Components Fabric Technologies, Inc. ("SCI") is a Delaware corporation and does business throughout the United States. SCI has its principal place of business in Greenville, South Carolina.

361.    SCI developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

362.    Defendant Southern Mills, Inc. d/b/a TenCate Protective Fabrics ("TenCate") is a Georgia corporation and does business throughout the United States. Southern Mills has its principal place of business at 6501 Mall Boulevard, Union City, Georgia 30291.

363.    TenCate developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

364.    Defendant Springfield, LLC ("Springfield") was acquired by Milliken in 2015.

365.    Springfield developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

366.    Defendant Veridian Limited ("Veridian") is an Iowa corporation and does business throughout the United States. Veridian has its principal place of business in Spencer, Iowa.

367.    Veridian developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

368.    Defendant W.L. Gore & Associates Inc. ("Gore") is a Delaware corporation and does business throughout the United States. Gore has its principal place of business at 1901 Barksdale Road, Newark, Delaware 19711.

369.    Gore developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

370.    Defendant Witmer Public Safety Group, Inc. ("Witmer") is a Pennsylvania corporation and does business throughout the United States. Witmer has its principal place of business in Coatesville, Pennsylvania.

371.    Witmer developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

372.    When reference is made in this Complaint to any act or omission of any of the Defendants, it shall be deemed that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction,

operation, or control of the affairs of Defendants, and did so while acting within the scope of their duties, employment or agency.

373.    The term "AFFF Defendant" or "AFFF Defendants" refers to all Defendants named herein who designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. jointly and severally, unless otherwise stated.

374.    The term "TOG Defendant" or "TOG Defendants" refers to all Defendants names herein who developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

375.    The term "DuPont Defendants" or "DuPont Defendants refers to Defendants Chemours Company FC, LLC, Du Pont de Nemours INC., E.I. DuPont de Nemours and Company, & The Chemours Company.

## FACTUAL ALLEGATIONS

376.    Aqueous Film-Forming Foam ("AFFF") is a combination of chemicals used to extinguish hydrocarbon fuel-based fires.

377.    AFFF-containing fluorinated surfactants have better firefighting capabilities than water due to their surfactant-tension lowering properties which allow the compound(s) to extinguish fire by smothering, ultimately starving it of oxygen.

378.    AFFF is a Class-B firefighting foam. It is mixed with water and used to extinguish fires that are difficult to fight, particularly those that involve petroleum or other flammable liquids.

379.    AFFF Defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled AFFF

containing toxic PFAS or underlying PFAS containing chemicals used in AFFF production that were used by entities around the country, including military, county, and municipal firefighting departments.

380.    AFFF Defendants have each designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, sold, and/or otherwise handled and/or used AFFF containing PFAS, in such a way as to cause the contamination of Plaintiffs' blood and/or body with PFAS, and the resultant biopersistence and bioaccumulation of such PFAS in the blood and/or body of Plaintiffs.

381.    AFFF was introduced commercially in the mid-1960s and rapidly became the primary firefighting foam in the United States and in other parts of the world. It contains PFAS, which are highly fluorinated synthetic chemical compounds whose family include PFOS and PFOA.

382.    PFAS are a family of chemical compounds containing fluorine and carbon atoms.

383.    PFAS have been used for decades in the manufacture of AFFF. The PFAS family of chemicals are entirely human-made and do not naturally occur or otherwise exist.

384.    Prior to commercial development and large-scale manufacture and use of AFFF containing PFAS, no such PFAS had been found or detected in human blood.

### A.    AFFF / PFAS Hazardous Effects on Humans

385.    AFFF and its components are associated with a wide variety of adverse health effects in humans.

386.    Exposure to AFFF Defendants' products has been linked to serious medical conditions including, but not limited to, kidney cancer, testicular cancer, liver cancer, testicular tumors, pancreatic cancer, prostate cancer, leukemia, lymphoma, bladder cancer, thyroid disease and infertility.

387.   By at least the end of the 1960s, animal toxicity testing performed by some Defendants manufacturing and/or using PFAS indicated that exposure to such materials, including at least PFOA, resulted in various adverse health effects among multiple species of laboratory animals, including toxic effects to the liver, testes, adrenals, and other organs and bodily systems.

388.   By at least the end of the 1960s, additional research and testing performed by some Defendants manufacturing and/or using PFAS indicated that such materials, including at least PFOA, because of their unique chemical structure, were resistant to environmental degradation and would persist in the environment essentially unaltered if allowed to enter the environment.

389.   By at least the end of the 1970s, additional research and testing performed by some Defendants manufacturing and/or using PFAS indicated that one or more such materials, including at least PFOA and PFOS, because of their unique chemical structure, would bind to proteins in the blood of animals and humans exposed to such materials where such materials would remain and persist over long periods of time and would accumulate in the blood/body of the exposed individuals with each additional exposure.

390.   By at least the end of the 1980s, additional research and testing performed by some Defendants manufacturing and/or using PFAS indicated that at least one such PFAS, PFOA, had caused Leydig cell (testicular) tumors in a chronic cancer study in rats, resulting in at least one such Defendant, DuPont, classifying such PFAS internally as a confirmed animal carcinogen and possible human carcinogen.

391.   It was understood by AFFF Defendants by at least the end of the 1980s that a chemical that caused cancer in animal studies must be presumed to present a cancer risk to humans, unless the precise mechanism of action by which the tumors were caused was known and would not occur in humans.

392.    By at least the end of the 1980s, scientists had not determined the precise mechanism of action by which any PFAS caused tumors. Therefore, scientific principles of carcinogenesis classification mandated AFFF Defendants presume any such PFAS material that caused tumors in animal studies could present a potential cancer risk to exposed humans.

393.    By at least the end of the 1980s, additional research and testing performed by some Defendants manufacturing and/or using PFAS, including at least DuPont, indicated that elevated incidence of certain cancers and other adverse health effects, including elevated liver enzymes and birth defects, had been observed among workers exposed to such materials, including at least PFOA, but such data was not published, provided to governmental entities as required by law, or otherwise publicly disclosed at the time.

394.    By at least the end of the 1980s, some Defendants, including at least 3M and DuPont, understood that, not only did PFAS, including at least PFOA and PFOS, get into and persist and accumulate in the human blood and in the human body, but that once in the human body and blood, particularly the longer-chain PFAS, such as PFOS and PFOA, had a long half-life. Meaning that it would take a very long time before even half of the material would start to be eliminated, which allowed increasing levels of the chemicals to build up and accumulate in the blood and/or body of exposed individuals over time, particularly if any level of exposure continued.

395.    By at least the end of the 1990s, additional research and testing performed by some Defendants manufacturing and/or using PFAS, including at least 3M and DuPont, indicated that at least one such PFAS, PFOA, had caused a triad of tumors (Leydig cell (testicular), liver, and pancreatic) in a second chronic cancer study in rats.

396.    By at least the end of the 1990s, the precise mechanism(s) of action by which any PFAS caused each of the tumors found in animal studies had still not been identified, mandating that

AFFF Defendants continue to presume that any such PFAS that caused such tumors in animal studies could present a potential cancer risk to exposed humans.

397.   By at least 2010, additional research and testing performed by some Defendants manufacturing and/or using PFAS, including at least 3M and DuPont, revealed multiple potential adverse health impacts among workers exposed to such PFAS, including at least PFOA, such as increased cancer incidence, hormone changes, lipid changes, and thyroid and liver impacts.

398.   When the United States Environmental Protection Agency ("USEPA") and other state and local public health agencies and officials first began learning of PFAS exposure in the United States and potential associated adverse health effects, AFFF Defendants repeatedly assured and represented to such entities and the public that such exposure presented no risk of harm and were of no significance.

399.   After the USEPA and other entities began asking Defendants to stop manufacturing and/or using certain PFAS, AFFF Defendants began manufacturing and/or using and/or began making and/or using more of certain other and/or "new" PFAS, including PFAS materials with six or fewer carbons, such as GenX (collectively "Short-Chain PFAS").

400.   AFFF Defendants manufacturing and/or using Short-Chain PFAS, including at least DuPont and 3M, are aware that one or more such Short-Chain PFAS materials also have been found in human blood.

401.   By at least the mid-2010s, AFFF Defendants, including at least DuPont and Chemours, were aware that at least one Short-Chain PFAS had been found to cause the same triad of tumors (Leydig (testicular), liver, and pancreatic) in a chronic rat cancer study as had been found in a chronic rat cancer study with a non-Short-Chain PFAS.

402.    Research and testing performed by and/or on behalf of AFFF Defendants making and/or using Short-Chain PFAS indicates that such Short-Chain PFAS materials present the same, similar, and/or additional risks to human health as had been found in research on other PFAS materials, including cancer risk.

403.    Nevertheless, AFFF Defendants repeatedly assured and represented to governmental entities and the public (and continue to do so) that the presence of PFAS, including Short-Chain PFAS, in human blood at the levels found within the United States present no risk of harm and is of no legal, toxicological, or medical significance of any kind.

404.    At all relevant times, AFFF Defendants, individually and/or collectively, possessed the resources and ability but have intentionally, purposefully, recklessly, and/or negligently chosen not to fund or sponsor any study, investigation, testing, and/or other research of any kind of the nature that AFFF Defendants claim is necessary to confirm and/or prove that the presence of any one and/or combination of PFAS in human blood causes any disease and/or adverse health impact of any kind in humans, presents any risk of harm to humans, and/or is of any legal, toxicological, or medical significance to humans, according to standards AFFF Defendants deem acceptable.

405.    Even after an independent science panel, known as the "C8 Science Panel," publicly announced in the 2010s that human exposure to 0.05 parts per billion or more of one PFAS, PFOA, had "probable links" with certain human diseases, including kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, preeclampsia, and medically-diagnosed high cholesterol, AFFF Defendants repeatedly assured and represented to governmental entities, their customers, and the public (and continue to do so) that the presence of PFAS in human blood at the levels found within the United States presents no risk of harm and is of no legal, toxicological, or medical significance of any kind, and have represented to and assured such governmental entities, their customers, and

the public (and continue to do so) that the work of the independent C8 Science Panel was inadequate.

406.    At all relevant times, AFFF Defendants shared and/or should have shared among themselves all relevant information relating to the presence, biopersistence, and bioaccumulation of PFAS in human blood and associated toxicological, epidemiological, and/or other adverse effects and/or risks.

407.    As of the present date, blood serum testing and analysis by AFFF Defendants, independent scientific researchers, and/or government entities has confirmed that PFAS materials are clinically demonstrably present in approximately 99% of the current population of the United States.

408.    There is no naturally-occurring "background," normal, and/or acceptable level or rate of any PFAS in human blood, as all PFAS detected and/or present in human blood is present and/or detectable in such blood as a direct and proximate result of the acts and/or omissions of Defendants.

409.    At all relevant times, Defendants, through their acts and/or omissions, controlled, minimized, trivialized, manipulated, and/or otherwise influenced the information that was published in peer-review journals, released by any governmental entity, and/or otherwise made available to the public relating to PFAS in human blood and any alleged adverse impacts and/or risks associated therewith, effectively preventing Plaintiffs from discovering the existence and extent of any injuries/harm as alleged herein.

410.    At all relevant times, Defendants, through their acts and/or omissions, took steps to attack, challenge, discredit, and/or otherwise undermine any scientific studies, findings, statements, and/or other information that proposed, alleged, suggested, or even implied any potential adverse

health effects or risks and/or any other fact of any legal, toxicological, or medical significance associated with the presence of PFAS in human blood.

411.    At all relevant times, Defendants, through their acts and/or omissions, concealed and/or withheld information from their customers, governmental entities, and the public that would have properly and fully alerted Plaintiffs to the legal, toxicological, medical, or other significance and/or risk from having any PFAS material in Plaintiffs' blood.

412.    At all relevant times, Defendants encouraged the continued and even further increased use of PFAS by their customers and others, including but not limited to the manufacture, use, and release, of AFFF containing PFAS and/or emergency responder protection gear or equipment coated with materials made with or containing PFAS, and tried to encourage and foster the increased and further use of PFAS in connection with as many products/uses/and applications as possible, despite knowledge of the toxicity, persistence, and bioaccumulation concerns associated with such activities.

413.    To this day, Defendants deny that the presence of any PFAS in human blood, at any level, is an injury or presents any harm or risk of harm of any kind, or is otherwise of any legal, toxicological, or medical significance.

414.    To this day, Defendants deny that any scientific study, research, testing, or other work of any kind has been performed that is sufficient to suggest to the public that the presence of any PFAS material in human blood, at any level, is of any legal, toxicological, medical, or other significance.

415.    Defendants, to this day, affirmatively assert and represent to governmental entities, their customers, and the public that there is no evidence that any of the PFAS found in human blood across the United States causes any health impacts or is sufficient to generate an increased

risk of future disease sufficient to warrant diagnostic medical testing, often referring to existing studies or data as including too few participants or too few cases or incidents of disease to draw any scientifically credible or statistically significant conclusions.

416.    Defendants were and/or should have been aware, knew and/or should have known, and/or foresaw or should have foreseen that their design, marketing, development, manufacture, distribution, release, training and response of users, production of instructional materials, sale and/or other handling and/or use of AFFF containing PFAS would result in the contamination of the blood and/or body of Plaintiffs with PFAS, and the biopersistence and bioaccumulation of such PFAS in their blood and/or body.

417.    Defendants were and /or should have been aware, or knew and/or should have known, and/or foresaw or should have foreseen that allowing PFAS to contaminate the blood and/or body of Plaintiffs would cause injury, irreparable harm, and/or unacceptable risk of such injury and/or irreparable harm to Plaintiffs.

418.    Defendants did not seek or obtain permission or consent from Plaintiffs before engaging in such acts and/or omissions that caused, allowed, and/or otherwise resulted in Plaintiffs' exposure to AFFF and the contamination of Plaintiffs' blood and/or body with PFAS materials, and resulting biopersistence and bioaccumulation of such PFAS in their blood and/or body.

B.    **Defendants' History of Manufacturing and Selling AFFF**

419.    3M began producing PFOS and PFOA by electrochemical fluorination in the 1940s.  In the 1960s, 3M used its fluorination process to develop AFFF.

420.    3M manufactured, marketed, and sold AFFF from the 1960s to the early 2000s.

421.    National Foam and Tyco/Ansul began to manufacture, market, and sell AFFF in the 1970s.

422.    Buckeye began to manufacture, market, and sell AFFF in the 2000s.

423.    In 2000, 3M announced it was phasing out its manufacture of PFOS, PFOA, and related products, including AFFF. 3M, in its press release announcing the phase out, stated "our products are safe," and that 3M's decision was "based on [its] principles of responsible environment management."  3M further stated that "the presence of these materials at [] very low levels does not pose a human health or environmental risk."  In communications with the EPA at that time, 3M also stated that it had "concluded that…other business opportunities were more deserving of the company's energies and attention…"

424.    Following 3M's exit from the AFFF market, the remaining AFFF Defendants continued to manufacture and sell AFFF that contained PFAS and/or its precursors.

425.    AFFF Defendants knew their customers warehoused large stockpiles of AFFF. In fact, AFFF Defendants marketed their AFFF products by touting its shelf-life. Even after AFFF Defendants fully understood the toxicity of PFAS, and their impacts to the health of humans following exposure, AFFF Defendants concealed the true nature of PFAS. While AFFF Defendants phased out production or transitioned to other formulas, they did not instruct their customers that they should not use AFFF that contained PFAS and/or their precursors. AFFF Defendants further did not act to get their harmful products off the market.

426.    AFFF Defendants did not warn public entities, firefighter trainees who they knew would foreseeably come into contact with their AFFF products, or firefighters employed by either civilian and/or military employers that use of and/or exposure to AFFF Defendants' products containing PFAS and/or its precursors would pose a danger to human health

427.    The Plaintiffs directly used, were exposed, and/or were given AFFF to help fight fires on a regular basis.

428.    The Plaintiffs were never informed that this product was inherently dangerous. Nor were the Plaintiff warned about the known health risks associated with this product.

429.    The Plaintiffs never received or were told to use any protective gear to guard against the known dangerous propensities of this product.

430.    AFFF Defendants have known of the health hazards associated with AFFF and/or its compounds for decades and that in their intended and/or common use would harm human health.

431.    Information regarding AFFF and its compounds were readily accessible to each of the above-referenced AFFF Defendants for decades because each is an expert in the field of AFFF manufacturing and/or the materials needed to manufacture AFFF, and each has detailed information and understanding about the chemical compounds that form AFFF products.

432.    The AFFF Defendants' manufacture, distribution and/or sale of AFFF resulted in the Plaintiffs and other individuals who came in contact with the chemical to develop cancer.

433.    The AFFF Defendants through their manufacturing, distribution and/or sale of AFFF, and through their involvement and/or participation in the creation of training and instructional materials and activities, knew, foresaw, and/or should have known and/or foreseen that the Plaintiffs and those similarly situated would be harmed.

434.    The AFFF Defendants' products were unreasonably dangerous and the Defendants failed to warn of this danger.

### C.    PFAS-Containing Turnout Gear

435.    During firefighting training and when responding to fires and performing fire extinguishment, firefighters wear turnouts that are intended to provide a degree of thermal, chemical, and biological protection for a firefighter. Turnout gear components include individual components such as a helmet, hood, jacket, pants and suspenders, boots, and gloves. Each

component of the jacket and pants are made of an outer layer, as well as several inner layers that include a moisture barrier and thermal liner which are meant to protect the firefighter from ambient heat.

436.    PFAS chemicals are used in turnout gear to impart heat, water, and stain resistance to the outer shell and moisture barrier of turnout gear.

437.    A June 2020 study of turnout gear by researchers at the University of Notre Dame analyzed 30 new and used turnout jackets and pants originally marketed, distributed and sold in 2008, 2014, and 2017, by six turnout gear makers, including Defendants MSA, Globe, Lion and Honeywell and found high levels of PFAS in turnout gear worn, used, or handled by firefighters, including the Firefighter Plaintiffs.

438.    When exposed to heat, PFAS chemicals in the turnouts off-gas, break down, and degrade into highly mobile and toxic particles and dust, exposing firefighters to PFAS chemicals, particles and dust, including through skin contact/absorption, ingestion (e.g., hand-to-mouth contact) and/or inhalation. Further firefighter exposure to these highly mobile and toxic materials occurs through normal workplace activities, because particles or dust from their turnouts spread to fire vehicles and fire stations, as well as firefighters' personal vehicles and homes.

439.    Such workplace exposure to PFAS or PFAS-containing materials has been found to be toxic to humans. As far back as a July 31, 1980 internal memo, DuPont officials described measures that were needed to prevent workplace exposure to PFOA, which they knew could permeate all protective materials, and noted that PFOA's toxicity varied depending on the exposure pathway, acknowledging that ingestion was "slightly toxic," dermal contact was "slightly to moderately toxic" and inhalation was "highly toxic." The memo concluded "continued exposure is not tolerable."

440.    As alleged herein, the Firefighter Plaintiffs wear and/or wore turnouts in the ordinary course of performing their duties, as the turnouts were intended to be used and in a foreseeable manner, which exposed them to significant levels of PFAS.

441.    The Firefighter Plaintiffs did not know, and in the exercise of reasonable diligence could not have known, that the turnouts they wore or used in the course of performing their duties contained PFAS or PFAS-containing materials, and similarly did not know and could not have known that they routinely suffered exposure to PFAS or PFAS-containing materials in the turnouts they wore or used in performing their duties.  The turnout gear worn or used by the Firefighter Plaintiffs did not and does not contain labeling information saying that the gear contains PFAS, and similarly did not and does not warn the Firefighter Plaintiffs of the health risks associated with exposure to PFAS.

442.    Like fire departments across the country, many Plaintiffs only had one set of turnouts for years, and would wash their turnouts at home and/or in station machines along with their daily station wear uniforms.

## CAUSES OF ACTION

## COUNT I – NEGLIGENCE

443.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

444.    Defendants had a duty to individuals, including the Plaintiffs, to exercise reasonable ordinary, and appropriate care in the manufacturing, design, labeling, packaging, testing, instruction, warning, selling, marketing, distribution, and training related to the AFFF or TOG product.

445.   Defendants breached their duty of care and were negligent, grossly negligent, reckless and willful as described herein in the design, manufacture, labeling, warning, instruction, training, selling, marketing, and distribution of the AFFF or TOG products or underlying PFAS containing chemicals used in AFFF or TOG production in one or more of the following respects:

a.  Failing to design the products so as to avoid an unreasonable risk of harm to individuals, including the Plaintiffs;

b.  Failing to use reasonable care in the testing of the products so as to avoid an unreasonable risk of harm to individuals, including the Plaintiffs;

c.  Failing to use appropriate care in inspecting the products so as to avoid an unreasonable risk of harm to individuals, including the Plaintiffs;

d.  Failing to use appropriate care in instructing and/or warning the public as set forth herein of risks associated with the products, so as to avoid unreasonable risk of harm to individuals, including the Plaintiffs;

e.  Failing to use reasonable care in marketing, promoting, and advertising the products so as to avoid unreasonable risk of harm to individuals, including the Plaintiffs;

f.  Otherwise negligently or carelessly designing, manufacturing, marketing, distributing, warning; and

g.  In selling and or distributing a product which was inherently dangerous to the public;

446.   As a direct and proximate result of Defendants' negligence, the Plaintiffs have been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including, but not limited to medical expenses, lost income, and/or other damages.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT II – BATTERY

447.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

448.    At all relevant times, Defendants possessed knowledge that the AFFF or TOG containing PFAS which they designed, engineered, manufactured, fabricated, sold, handled, released, trained users on, produced instructional materials for, used, and/or distributed were bio-persistent, bio- accumulative, toxic, potentially carcinogenic, and/or otherwise harmful/injurious and that their continued manufacture, use, sale, handling, release, and distribution would result in Plaintiffs having PFAS in Plaintiffs' blood, and the biopersistence and bioaccumulation of such PFAS in Plaintiffs' blood.

449.    However, despite possessing such knowledge, Defendants knowingly, purposefully, and/or intentionally continued to engage in such acts and/or omissions, including but not limited to all such acts and/or omissions described in this Complaint, that continued to result in Plaintiffs accumulating PFAS in Plaintiffs' blood and/or body, and such PFAS persisting and accumulating in Plaintiffs' blood and/or body.

450.    Defendants did not seek or obtain permission or consent from Plaintiffs to put or allow PFAS materials into Plaintiffs' blood and/or body, or to persist in and/or accumulate in Plaintiffs' blood and/or body.

451.    Entry into, persistence in, and accumulation of such PFAS in Plaintiffs' body and/or blood without permission or consent is an unlawful and harmful and/or offensive physical invasion and/or contact with Plaintiffs' person and unreasonably interferes with Plaintiffs' rightful use and possession of Plaintiffs' blood and/or body.

452.    At all relevant times, the PFAS present in the blood of Plaintiffs originated from Defendants' acts and/or omissions.

453.    Defendants continue to knowingly, intentionally, and/or purposefully engage in acts and/or omissions that result in the unlawful and unconsented-to physical invasion and/or contact with Plaintiffs that resulted in persisting and accumulating levels of PFAS in Plaintiffs' blood.

454.    Plaintiffs, and any reasonable person, would find the contact at issue harmful and/or offensive.

455.    Defendants acted intentionally with the knowledge and/or belief that the contact, presence and/or invasion of PFAS with, onto and/or into Plaintiffs' blood serum, including its persistence and accumulation in such serum, was substantially certain to result from those very acts and/or omissions.

456.    Defendants' intentional acts and/or omissions resulted directly and/or indirectly in harmful contact with Plaintiffs' blood and/or body.

457.    The continued presence, persistence, and accumulation of PFAS in the blood and/or body of Plaintiffs is offensive, unreasonable, and/or harmful, and thereby constitutes a battery.

458.    The presence of PFAS in the blood and/or body of Plaintiffs altered the structure and/or function of such blood and/or body parts and resulted in cancer.

459.    As a direct and proximate result of the foregoing acts and omissions, Plaintiffs suffered physical injury for which Defendants are therefore liable.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT III – INADEQUATE WARNING

460.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

461.    Defendants knew or should have known:

a)  exposure to AFFF or TOG containing PFAS was hazardous to human health;

b)  the manner in which they were designing, marketing, developing, manufacturing, distributing, releasing, training, instructing, promoting, and selling AFFF or TOG containing PFAS was hazardous to human health; and

c)  the manner in which they were designing, marketing, developing, manufacturing, marketing, distributing, releasing, training, instructing, promotion and selling AFFF or TOG containing PFAS would result in the contamination of Plaintiffs' blood and/or body as a result of exposure.

462.    Defendants had a duty to warn of the hazards associated with AFFF or TOG containing PFAS entering the blood and/or body of Plaintiffs because they knew of the dangerous, hazardous, and toxic properties of AFFF or TOG containing PFAS. Defendants failed to provide sufficient warning to purchasers that the use of their AFFF or TOG products would cause PFAS to be released and cause the exposure and bioaccumulation of these toxic chemicals in the blood and/or body of Plaintiffs.

463.    Adequate instructions and warnings on the AFFF or TOG containing PFAS could have reduced or avoided these foreseeable risks of harm and injury to Plaintiffs. If Defendants provided adequate warnings:

a)  Plaintiffs could have and would have taken measures to avoid or lessen exposure; and

b)  end users and governments could have taken steps to reduce or prevent the release of PFASs into the blood and/or body of Plaintiffs. Defendants' failure to warn was a direct and proximate cause of Plaintiffs' injuries from PFAS that came from the use, storage, and disposal of AFFF or TOG containing PFAS. Crucially, Defendants' failure to provide adequate and sufficient warnings for the AFFF or TOG containing PFAS they designed, marketed, manufactured, distributed, released, promoted, and sold renders the AFFF or TOG a defective product.

464.    Defendants were negligent in their failure to provide Plaintiffs with adequate warnings or instruction that the use of their AFFF or TOG products would cause PFAS to be released into the

blood and/or body of Plaintiffs. As a result of Defendants' conduct and the resulting contamination, Plaintiffs suffered severe personal injuries by exposure to AFFF or TOG containing PFAS.

465.    Defendants' negligent failure to warn directly and proximately caused the harm to and damages suffered by Plaintiffs.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT IV – DESIGN DEFECT

466.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

467.    Defendants knew or should have known:

a)  exposure to AFFF or TOG containing PFAS is hazardous to human health;

b)  the manner in which AFFF or TOG containing PFAS was designed, manufactured, marketed, distributed, and sold was hazardous to human health; and

c)  the manner in which AFFF or TOG containing PFAS was designed, manufactured, marketed, distributed, and could and would release PFAS into Plaintiffs and cause the exposure and bioaccumulation of these toxic and poisonous chemicals in the blood and/or body of Plaintiffs.

468.    Knowing of the dangerous and hazardous properties of the AFFF or TOG containing PFAS, Defendants could have designed, manufactured, marketed, distributed, and sold alternative designs or formulations of AFFF or TOG that did not contain hazardous and toxic PFAS. These alternative designs and formulations were already available, practical, and technologically feasible. The use of these alternative designs would have reduced or prevented reasonably

foreseeable harm to Plaintiff caused by the Defendants' design, manufacture, marketing, distribution, and sale of AFFF or TOG containing hazardous and toxic PFAS.

469.    The AFFF or TOG containing PFAS that was designed, manufactured, marketed, distributed, and sold by the Defendants was so hazardous, toxic, and dangerous to human health that the act of designing, formulating, manufacturing, marketing, distributing, and selling this AFFF was unreasonably dangerous under the circumstances.

470.    The AFFF or TOG designed, formulated, manufactured, marketed, distributed, and sold by Defendants was defectively designed and the foreseeable risk of harm could and would have been reduced or eliminated by the adoption of a reasonable alternative design that was not unreasonably dangerous.  Defendants' defective design and formulation of AFFF or TOG containing PFAS was a direct and proximate cause of the contamination of the blood and/or body of Plaintiffs and the persistence and accumulation of PFAS in Plaintiffs' blood and/or body.

471.    Defendants' defective design and formulation of AFFF or TOG containing PFAS caused the contamination described herein resulting in personal injuries to Plaintiffs. As a direct result of the harm and injury caused by Defendants' defective design and the contamination described herein, Plaintiffs have been exposed to AFFF or TOG containing PFAS and other toxic substances and has developed cancer.

472.    Defendants' negligent failure to design a reasonably safe product directly and proximately caused the harm to and damages suffered by Plaintiffs.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

### COUNT V – STRICT LIABILITY (STATUTORY)

473.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

474.    Plaintiffs asserts any and all remedies available under statutory causes of action from Plaintiffs' states for strict liability against each Defendant.

475.    The Defendants were engaged in designing, manufacturing, marketing, selling, and distribution of AFFF or TOG.

476.    The AFFF or TOG was in a defective condition and unreasonably dangerous to users and/or consumers when designed, manufactured, marketed, sold, and/or distributed to the public by the Defendants.

477.    As a direct and proximate result of the Defendants products' aforementioned defects, the Plaintiffs have been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including, but not limited to medical expenses, lost income, and other damages.

478.    The Defendants are strictly liable in tort to the Plaintiffs for their wrongful conduct.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT VI – STRICT LIABILITY (RESTATEMENT)

479.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

480.    The Plaintiffs bring strict product liability claims under the common law, Section 402A of the Restatement of Torts (Second), and/or Restatement of Torts (Third) against Defendants.

481.    As designed, manufactured, marketed, tested, assembled, equipped, distributed and/or sold by the Defendants the AFFF or TOG product was in a defective and unreasonably dangerous condition when put to reasonably anticipated use to foreseeable consumers and users, including the Plaintiffs.

482.    The Defendants had available reasonable alternative designs which would have made the AFFF or TOG product safer and would have most likely prevented the injuries and damages to the Plaintiffs, thus violating state law and the Restatement of Torts.

483.    The Defendants failed to properly and adequately warn and instruct the Plaintiffs as to the proper safety and use of the Defendants product.

484.    The Defendants failed to properly and adequately warn and instruct the Plaintiffs regarding the inadequate research and testing of the product.

485.    The Defendants' products are inherently dangerous and defective, unfit and unsafe for their intended and reasonably foreseeable uses, and do not meet or perform to the expectations.

486.    As a proximate result of the Defendants' design, manufacture, marketing, sale, and distribution of the products, the Plaintiffs have been injured and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, and economic damages.

487.    By reason of the foregoing, the Defendants are strictly liable for the injuries and damages suffered by the Plaintiffs, caused by these defects in the AFFF or TOG product.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT VII – FRAUDULENT CONCEALMENT

488.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

489.     Throughout the relevant time period, Defendants knew that their products were defective and unreasonably unsafe for their intended purpose.

490.     Defendants fraudulently concealed from and/or failed to disclose to or warn the Plaintiffs, and the public that their products were defective, unsafe, and unfit for the purposes intended, and that they were not of merchantable quality.

491.     Defendants were under a duty to the Plaintiffs and the public to disclose and warn of the defective and harmful nature of the products because:

   a) Defendants were in a superior position to know the true quality, safety and efficacy of the Defendants' products;

   b) Defendants knowingly made false claims about the safety and quality of the Defendants' product in documents and marketing materials; and

   c) Defendants fraudulently and affirmatively concealed the defective nature of the Defendants' products from the Plaintiffs.

492.     The facts concealed and/or not disclosed by Defendants to the Plaintiffs were material facts that a reasonable person would have considered to be important in deciding whether or not to purchase and/or use the Defendants' products.

493.     Defendants intentionally concealed and/or failed to disclose the true defective nature of the products so that the Plaintiffs would use the Defendants' products, the Plaintiffs justifiably acted or relied upon, to Plaintiffs' detriment, the concealed and/or non-disclosed facts as evidenced by Plaintiffs' use of the Defendants' products.

494.     Defendants, by concealment or other action, intentionally prevented the Plaintiffs from acquiring material information regarding the lack of safety and effectiveness of the Defendants' products and are subject to the same liability to the Plaintiffs for Plaintiffs' pecuniary losses, as

though Defendants had stated the non-existence of such material information regarding the Defendants' products' lack of safety and effectiveness and dangers and defects, and as though Defendants had affirmatively stated the non-existence of such matters that the Plaintiffs were thus prevented from discovering the truth. Defendants therefore have liability for fraudulent concealment under all applicable laws, including, inter alia, Restatement (Second) of Torts §550 (1977).

495.    As a proximate result of Defendants' conduct, the Plaintiffs have been injured, and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT VIII – BREACH OF EXPRESS AND IMPLIED WARRANTIES

496.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

497.    At all times relevant hereto, the Defendants manufactured, marketed, labeled, and sold the AFFF or TOG products that has been previously alleged and described herein.

498.    At the time the Defendants designed, developed, marketed, sold, labeled, and distributed the AFFF or TOG products, the Defendants knew of the use for which it was intended, and implied and/or expressly warranted that the product was merchantable, safe, and fit for its intended purpose.

499. The Defendants warranted that the product was merchantable and fit for the particular purpose for which it was intended and would be reasonably safe. These warranties were breached, and such breach proximately resulted in the injuries and damages suffered by the Plaintiffs.

500. The Plaintiffs are within the class of foreseeable users and reasonably relied upon Defendants' judgment, and the implied and/or express warranties in using the products.

501. The Defendants breached their implied and/or express warranties and did not meet the expectations for the performance of the product when used for its intended use and was neither of merchantable quality nor safe for its intended use in that the product has a propensity to cause serious injury, pain, and cancer.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT IX – WANTONNESS

502. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

503. Defendants and their employees, agents, officers, and representatives owed a duty of care to end users of their AFFF or TOG products, including Plaintiffs.

504. Defendants breached the duty of care owed to the Plaintiffs.

505. The actions of Defendants and their employees, agents, officers, and representatives were willful and wanton and exhibited a reckless disregard for the life, health, and safety of the end users of Defendants' AFFF or TOG products, including Plaintiffs.

506.    As a proximate and foreseeable consequent of the actions of Defendants, Plaintiffs were exposed to unreasonably dangerous toxic PFAS containing AFFF or TOG, which caused Plaintiffs' injury.

WHEREFORE, the Plaintiffs pray judgments against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT X  -  FRAUDULENT TRANSFER, 6 Del. C. § 1304
### (DUPONT DEFENDANTS)

507.    Plaintiffs reallege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated herein.

508.    Under Delaware Code Title 6, § 1304:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) With actual intent to hinder, delay or defraud any creditor of the debtor; or

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

a. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

b Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

509.    The Plaintiffs are a "Creditor" possessing "Claims" against the DuPont Defendants as those terms are defined in Delaware Code Title 6, § 1301.

510.    The DuPont Defendants have acted with actual intent to hinder, delay, and defraud DuPont's creditors.

511.    Assets and liabilities were transferred between the DuPont Defendants, whereby certain DuPont Defendants did not receive a reasonably equivalent value in exchange for the transfer and

they were engaged in or about to engage in a business for which the remaining assets were unreasonably small and/or they intended to incur or reasonably should have believed that they would incur debts beyond their ability to pay as the debts became due.

512.    On information and belief, the DuPont Defendants engaged in a complicated restructuring of DuPont for the purpose of shielding assets from creditors such as the Plaintiffs, with claims related to PFAS contamination.

513.    On information and belief, at the tiFme of this restructuring, DuPont knew that its liabilities related to PFAS were likely in the billions of dollars.

514.    In the initial step of restructuring, DuPont formed Chemours in 2015 as a wholly owned subsidiary. In July 2015, DuPont spun off Chemours, transferring DuPont's Performance Chemicals Unit along with a vast amount of environmental liabilities – including all those related to PFAS. As part of the transfer, Chemours transferred valuable assets to DuPont, including a $3.9 billion dividend to DuPont stockholders, for which Chemours incurred additional debt to pay.

515.    On information and belief, the Chemours spin-off was not bargained at arm's length. At the time of the spin off, Chemours had a separate board, but was controlled by DuPont employees.

516.    On information and belief, DuPont transferred to Chemours a disproportionately small allocation of assets to cover debts and liabilities. Dupont transferred less than 20% of its business line, but over 66% of its environmental liabilities and 90% of DuPont's pending litigation. These liabilities were taken on by Chemours in addition to the $3.9 billion in debt it assumed to pay a dividend to DuPont's shareholders. As a result, Chemours did not receive reasonably equivalent value in exchange for the transfer of debts and obligations from DuPont.

517.    In its valuation, DuPont purposefully undervalued the potential maximum liability from the PFAS liabilities it transferred to Chemours. At the time of the spin-off, DuPont had been sued

threatened with lawsuits, and had knowledge of forthcoming litigation regarding DuPont's liabilities for damages and injuries from the manufacture, sale, and worldwide use of PFAS-containing products. DuPont and Chemours knew or should have known that Chemours would incur debts beyond its ability to pay as they came due.

518.     In further restructuring, DuPont sought to further protect its assets from PFAS liabilities by first merging itself with Dow and then separating its now comingled assets among three newly created companies: DowDuPont, Inc. ("DowDuPont") (which later became New DuPont); Dow, Inc. ("New Dow"), and Corteva.

519.     As a result of the merger, Dow and DuPont became wholly owned subsidiaries of DowDupont. On information and belief, after the merger, DowDupont underwent a hidden internal reorganization with the net effect being the transfer of a substantial portion of its valuable assets to DowDupont for less than the assets were worth. On information and belief, the transactions were intended to frustrate and hinder creditors with claims against DuPont, including with respect to PFAS liabilities.

520.     As a result of this internal organization, all of Dow and DuPont's assets were reshuffled into three divisions: the Agriculture Business, the Specialty Products Business, and the Material Sciences Business.

521.     On June 1, 2019, the DuPont Defendants completed the final step of the restructuring by spinning off two newly publicly traded entities, Corteva and New Dow. Generally, the assets related to the Agriculture Business division were allocated to Corteva; assets related to the Material Science Business were allocated to New Dow; and the assets related to the Specialty Products Business remained with DowDupont, which then became New DuPont. DuPont became a wholly owned subsidiary of Corteva.

522.    On information and belief, Corteva and New DuPont assumed responsibility for some of DuPont's historic PFAS liabilities.

523.    On information and belief, during the restructuring, DuPont's assets were transferred to Corteva and New DuPont for far less than their actual value. At the end of these transactions, DuPont divested approximately half of its tangible assets, totaling roughly $20 billion.

524.    The net result of the restructuring was to move DuPont's extensive PFAS liabilities to an underfunded company, Chemours, and to further shield DuPont's extensive assets by merging them with Dow's assets and then transferring them to Corteva and New DuPont for far less than their value.

525.    Plaintiffs have been harmed by these transactions, which were designed to shield assets from creditors such as the Plaintiffs, which have been damaged by DuPont's conduct.

526.    Plaintiffs are entitled to void these transactions and to recover property or value transferred under 6 Del. C. § 1307.

## TOLLING OF THE STATUTE OF LIMITATIONS

### Discovery Rule Tolling

527.    Plaintiffs had no way of knowing about the risk of serious injury associated with the use of and exposure to PFAS until very recently.

528.    Within the time period of any applicable statute of limitations, Plaintiffs could not have discovered, through the exercise of reasonable diligence, that exposure to PFAS is harmful to human health.

529.    Plaintiffs did not discover and did not know of facts that would cause a reasonable person to suspect the risk associated with the use of and exposure to PFAS; nor would a reasonable and diligent investigation by Plaintiffs have disclosed that PFAS could cause personal injury.

530.    For these reasons, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiffs' claims.

**Fraudulent Concealment Tolling**

531.    All applicable statute of limitations have also been tolled by Defendants knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

532.    Instead of disclosing critical safety information regarding AFFF or TOG, Defendants have consistently and falsely represented the safety of AFFF or TOG products.

533.    This fraudulent concealment continues through present day.

534.    Due to this fraudulent concealment, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiffs' claims.

## Estoppel

535.    Defendants were under a continuous duty to consumer, end users, and other persons coming into contact with their products, including Plaintiffs, to accurately provide safety information concerning its products and the risk associated with the use of and exposure to AFFF or TOG.

536.    Instead, Defendants knowingly, affirmatively, and actively concealed safety information concerning AFFF or TOG and the serious risks associated with the use of and exposure to AFFF or TOG.

537.    Based on the foregoing, Defendants are estopped from relying on any statute of limitations in defense of this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgments against all Defendants, jointly and severally, on each of the above-referenced claims and Causes of Action as follows:

Awarding compensatory damages to Plaintiffs for past and future damages, including but not limited, to pain and suffering for severe and permanent personal injuries sustained by the Plaintiffs, health care costs, medical monitoring, together with interest and costs as provided by law;

Punitive and/or exemplary damages for the wanton, willful, fraudulent, and/or reckless acts of the Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the Plaintiffs and of the general public and to the Plaintiffs in an amount sufficient to punish Defendants and deter future similar conduct;

Awarding Plaintiffs attorneys' fees;

Awarding Plaintiffs the costs of these proceedings; and

Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

The Plaintiff hereby demands a trial by jury.

Respectfully Submitted,

**ENVIRONMENTAL LITIGATION GROUP, P.C.**

*/s/ Gregory A. Cade*
Gregory A. Cade
Gary A. Anderson
Kevin B. McKie
Yahn E. Olson
ENVIRONMENTAL LITIGATION GROUP, P.C.

2160 Highland Avenue South
Birmingham, AL 35205
Telephone: 205-328-9200
Facsimile: 205-328-9456

**SERVE THE DEFENDANTS AT THE FOLLOWING ADDRESSES BY CERTIFIED MAIL:**

3M COMPANY
c/o Corporation Service
Company 251 Little Falls Drive
Wilmington, New Castle, DE 19808